UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **FIRST BAPTIST CHURCH OF WATAUGA TEXAS,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | **Civil Action No. 4:22-cv-00185-O** |
| **CHURCH MUTUAL INSURANCE COMPANY, S.I.,** | § § § | |
| **Defendants.** | § § | |

## OPINION & ORDER ON DEFENDANT CHURCH MUTUAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court are Defendant Church Mutual Insurance Company, S.I.'s Motion for Partial Summary Judgment (ECF No. 21) and Amended Brief in Support (ECF No. 24), filed January 13, 2023 and January 17, 2023 respectively; Plaintiff First Baptist Church of Watauga Texas' Response (ECF No. 25), filed February 3, 2023; and Defendant's Reply (ECF No. 30), filed February 17, 2023. Having reviewed the parties' briefing and applicable law, the Court **DENIES** Defendant's motion.

## I.     BACKGROUND[1]

This case is an insurance coverage dispute between First Baptist Church of Watauga and Church Mutual Insurance Company, S.I. involving First Baptist's church building located at 6124 Plum Street, Watauga, Texas 76148 ("the Property"). The damage to the Property allegedly occurred in a hailstorm on or around April 27, 2020, at which time—and for thirty years prior—First Baptist held an insurance policy with Church Mutual ("the Policy"). Among other things, the

---

[1] The Court recites the uncontested facts as recorded in Plaintiff's Amended Complaint (ECF No. 9) or the parties' summary judgment briefing.

Policy covers hail and wind damage and includes a sublimit of $100,000 for necessary code upgrades.[2]

Late in 2020, First Baptist noticed interior leaks inside the church building that were coming from the roof and, on or around February 23, 2021, filed an insurance claim ("the Claim") with its carrier. On February 24, 2021, Church Mutual acknowledged receipt of the Claim and assigned it to a third-party adjusting company, G4S Compliance & Investigations, Inc. ("G4S"), for further investigation. After inspecting the church, G4S issued a report finding extensive damage to the building as a result of the suspected hailstorm and, on March 16, 2021, prepared an estimate indicating a replacement cost value ("RCV") of $127,663.22 (G4S First Estimate).[3] The estimate included repair costs for roof damage, but did not address code upgrades or repairs to the siding or building interior. G4S submitted its First Estimate to Church Mutual on March 18, 2021.

On April 7, 2021 (Claim Adjustment Letter 1) Church Mutual sent a letter that relied on G4S's replacement cost value, less depreciation and deductible, and enclosed a payment of $55,119.20.[4] In response to First Baptist's disagreement with this initial settlement offer, Church Mutual sent another letter dated June 9, 2021 (June 9 Denial Letter) noting—without any explanation for the basis of its determination and prior to reinspecting the Property—that any interior damage to the church was "the result of age, wear and tear and deferred maintenance and . . . not related to a covered cause of loss."[5] A series of communications between the parties ensued,

---

[2] Def.'s App'x in Supp. of Mot. for Summ. Judgment 67–69, Ex. A, ECF No. 23-1 (If loss occurs to a covered building, the Policy pays for increased costs for repair or reconstruction of damaged property "when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law. … The most we will pay under this Additional Coverage is $100,000.").
[3] Def.'s App'x, Ex. D, ECF No. 23-4.
[4] Def.'s App'x, Ex. E, ECF No. 23-5.
[5] Def.'s App'x, Ex. F, ECF No. 23-6; Pl.'s Br. 3–4, ECF No. 25.

during which Church Mutual asked for several 30-day extensions and, eventually, additional information to further investigate the Claim.[6]

After multiple requests by First Baptist, Church Mutual had G4S reinspect the Property and prepare a second estimate dated July 20, 2021 (G4S Second Estimate).[7] This Second Estimate set repair costs at $334,490.86 RCV and $273,748.25 ACV—more than doubling G4S's initial estimate of costs for repair.[8] Church Mutual received this estimate on July 20, 2021. First Baptist alleges that this $334,490.86 did not account for code upgrades, siding, and interior repairs, while Church Mutual claims that "the costs related to insulation and sheathing are indisputably code upgrades"—though not specifically identified as such in that estimate.[9]

On August 7, 2021, G4S revised its Second Estimate, itemizing $167,505.67 of the $334,490.86 RCV as code compliance upgrades (G4S Third Estimate).[10] Two days later, on August 9, 2021 (Claim Adjustment Letter 2), Church Mutual sent another letter that set the covered loss at $266,985.19 RCV less depreciation in the amount $146,970.73 and enclosed an additional payment of $36,615.26.[11] First Baptist again disputed this adjustment.

On September 13, 2021 (September 13 Information Request)—for the first time in its nearly seven-month-long investigation—Church Mutual asked for information from First Baptist related to code enforcement on the Property, the age of the building components, and records showing building valuation, repairs and depreciation of the building.[12] A few days prior, on September 7, 2021, Church Mutual learned that the Property might not be subject to code

---

[6] Pl.'s Resp. 4–6, ECF No. 25.
[7] Pl.'s Resp., Ex. A, ECF No. 25-1.
[8] *Id.*
[9] Pl.'s Resp. 4, ECF No. 25; Def.'s Reply 11–12, ECF No. 30.
[10] Def.'s App'x, Ex. R, ECF No. 31-2 at 6.
[11] Def.'s App'x, Ex. J, ECF No. 23-10.
[12] Pl.'s Resp. 5, ECF No. 25; *Id.*, Ex. D, ECF No. 25-4.

enforcement, depending on results of a pending reinspection.[13] Soon after, on September 21, 2021 (Claim Adjustment Letter 3), Church Mutual sent a third and final payment of $25,657.50 to First Baptist.[14] This letter indicated a $210,339.98 RCV and $145,671.96 ACV that, according to Church Mutual, was based upon *another* revised G4S estimate ("G4S Fourth Estimate").[15] Based on the parties' briefing, it is unclear whether during this ongoing correspondence First Baptist received the G4S Third and Fourth Estimates which purportedly served as the basis for Church Mutual's subsequent adjustment letters.[16]

During this ongoing correspondence, First Baptist hired public adjuster, Eric Saum, who inspected the Property and prepared a report estimating repair costs at $896,078.21 RCV and $853,337.85 ACV, including a line item for "Code Upgrades" in the amount of $151,911.18 (Saum Estimate).[17] In total, Church Mutual paid First Baptist $117,391.96 for damage to the Property that the company deemed covered while First Baptist's public adjuster estimated repair costs at nearly one million. In light of the parties' impasse, First Baptist filed this lawsuit in January 2022.

## II.    LEGAL STANDARD

Defendant is entitled to summary judgment if by the pleadings and evidence it can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477

---

[13] Def.'s App'x, Ex. T, ECF No. 31-4.
[14] Def.'s App'x, Ex. I, ECF No. 23-9; Pl.'s Br. 5, ECF No. 25.
[15] *Id.*; Def.'s App'x, Ex. U, ECF No. 31-5.
[16] Pl.'s Resp. 4, 6, ECF No. 25 (noting that neither Claim Adjustment Letter 2 nor Claim Adjustment Letter 3 provided any bona fide basis or explanation regarding Church Mutual's subsequent adjustments to RCV that depart substantially from its own adjuster's estimates).
[17] Def.'s App'x, Ex. K, ECF No. 23-11 at 15.

4

U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.*

The movant must inform the Court of the basis for its motion and identify the portions of the record that reveal there are no genuine disputes of material fact. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). "Moreover, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Id.* And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250. "[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (cleaned up). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Id.*

## III.   ANALYSIS

Church Mutual argues that it is entitled to partial summary judgment as a matter of law (1) on First Baptist's breach of contract claim because First Baptist has not adequately demonstrated the *extent* of its covered loss, (2) on grounds that First Baptist's potential recovery for damages related to code upgrades and compliance are capped at $100,000, and (3) on First Baptist's claims of bad faith and violations of the Texas Insurance Code and Deceptive Trade Practices Act

("DTPA"). In response, First Baptist claims there are triable issues of fact that remain with respect to its breach of contract and bad faith claims.

### A.  Breach of Contract for Failure to Demonstrate Extent of Loss

To prevail on its breach of contract claim, First Baptist "bears the burden of proving that [its] loss is covered under the terms of [the] insurance policy." *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004). "If covered and non-covered perils combine to create a loss, [First Baptist] may only recover the amount caused by the covered peril." *Id.* Thus, in insurance disputes, it is a material fact whether a type of loss is or is not "covered" under a particular policy. The insured must also prove the extent of its loss to obtain damages. *Ayoub v. Chubb Lloyds Ins. Co. of Texas*, 641 F. App'x 303, 307 (5th Cir. 2016). In cases of combined covered and non-covered loss, the insured must produce some evidence with which a jury could reasonably determine how to allocate the covered and non-covered losses. *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167 (5th Cir. 2018).

Church Mutual seeks summary judgment on First Baptist's breach of contract claim "as it relates to alleged full replacement of the siding . . . because [First Baptist] has failed to meet its burden to prove covered damage to the siding requiring full replacement."[18] Importantly, Church Mutual does not contest that covered damage to the siding (due to either hail or wind) actually occurred on the alleged date of loss.[19] What Church Mutual contests is the degree of damage caused by the particular hailstorm—that is, it claims entitlement to summary judgment on grounds that First Baptist has purportedly failed to meet its burden to show "the *extent* of its alleged loss."[20]

---

[18] Def.'s Mot. 2, ECF No. 21.
[19] Def.'s Br. 8–9, ECF No. 24 ("Church Mutual . . . identified only *limited damage* to the *siding* and soffits requiring repairs.") (emphasis added).
[20] Def.'s Br. 11, ECF No. 24.

According to Church Mutual, First Baptist cannot satisfy this burden because its expert's (Tom Witherspoon) opinion is conclusory, unreliable, and therefore inadmissible.[21] If it cannot rely on its expert's opinion, First Baptist has not produced *any* evidence demonstrating (a) the extent to which damage to the siding was caused by wind or by hail or (b) that the hailstorm in question caused harm necessitating full replacement of the siding.[22] In support of this assertion, Church Mutual makes two arguments: "[First Baptist] implies that it does not matter whether wind or hail, or both, damaged the Property, or whether such damage occurred on the date of loss . . . [and it] fails to acknowledge that hail and wind can be separate and distinct losses with separate deductibles."[23] And, "Witherspoon fails to establish sufficient data and/or evidence to establish that the siding was damaged by hail and/or wind during the subject storm requiring full replacement."[24]

But Church Mutual's arguments misapply the applicable legal rules. Because both wind and hail are covered causes of damage under the subject Policy, First Baptist need not allocate each cause of damage as it would if, for example, wind was a covered peril and hail was not. Thus, the Court is not persuaded that for First Baptist to carry its burden to demonstrate the extent of its loss, it must point to evidence specifically allocating what portion of the damage to the siding is attributable to hail or wind, and vice versa.

And though Church Mutual attacks the reliability and conclusory nature of Witherspoon's expert opinion, that does not erase the fact that his opinions are part of the record in this case. This means that First Baptist has, as it must on summary judgment, successfully pointed to specific record evidence highlighting a dispute of material fact regarding the cause and extent of damage

---

[21] Def.'s Br. 9–12, ECF No. 24.
[22] *Id.* at 8–12.
[23] Def.'s Reply 6, ECF No. 30.
[24] *Id.* at 7.

to the siding that may necessitate full replacement. Nor is Witherspoon's opinion about the extent of loss to the siding the only evidence of such loss.[25] As such, even if Witherspoon's opinion does not meet the *Daubert* standard (a question the Court does not resolve here), there is other evidence in the record that goes to the need for full replacement of the siding, rather than limited repair. The estimate prepared by First Baptist's public adjuster indicates that substantial wind damage to the siding (in the amount of $204,348.68 RCV) occurred as a result of the suspected hailstorm event.[26] This line item—for siding alone—is nearly the same as the *total* RCV that Church Mutual says First Baptist is entitled to. This suggests that full replacement of the siding may be necessary, without any need to rely on Witherspoon's opinion.

In sum, First Baptist has produced evidence showing a dispute of fact as to the extent of damage to the Property. Church Mutual claims the alleged damage requires only repair, while First Baptist alleges extensive damage necessitating full replacement. And though First Baptist does indeed bear the burden to produce the extent of its loss, at the summary judgment stage, it need only point to some evidence in the record demonstrating that the extent of loss to the church building is an issue of material fact in dispute. It has done so here. For this reason, Church Mutual's motion for summary judgment on the breach of contract claim as a result of First Baptist's failure to prove the extent of its loss is **DENIED**.

### B.  Cap on Coverage for Code Upgrades

The Policy imposes a $100,000 sublimit for the repairs on the Property that are necessary as a result of code upgrades.[27] First Baptist does not dispute this sublimit amount. What the parties

---

[25] *Id.* at 9; Def.'s Reply 6, ECF No. 30.
[26] Def.'s App'x, Ex. K, ECF No. 23-11. The public adjuster's report indicates the date of loss as February 23, 2021 but subsequent investigation revealed an earlier date of loss, April 27, 2020, at which time Plaintiff was covered by the Policy. *Id.*; Pl.'s Resp. 5, ECF No. 25; Def.'s Br. 2, ECF No. 24.
[27] Def.'s App'x 67–69, Ex. A, ECF No. 23-1.

dispute is the extent to which the damage to the church building is due to storm damage versus code upgrades. First Baptist argues the siding must be replaced as a result of storm damage.[28] By contrast, Church Mutual argues that because First Baptist "has failed to establish physical loss or damage to the siding requiring full replacement resulting from the reported storm [as argued above], the only other conceivable basis for replacing the siding would be due to the purportedly required additional insulation in the roofing per local building ordinance, i.e. 'code upgrades.'"[29] It asks the Court to limit First Baptist's recovery for full replacement of siding accordingly.[30]

The Court rejects Church Mutual's arguments for limiting First Baptist's recovery for siding replacement at this stage for reasons similar to those discussed above. Because First Baptist has—e.g., through its public adjuster's report—produced evidence indicating that the siding may need to be replaced as a result of wind damage, the question of whether these repairs fall within the Policy's "code upgrades" sublimit is a question that remains for the jury. As such, the Court **DENIES** Church Mutual's motion for summary judgment on this basis.

### C. Extra-Contractual Common Law Bad Faith and Statutory Claims

Insurance companies have a duty to deal fairly and in good faith with an insured in the processing of claims. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). To sustain a claim of bad faith, it must be shown that "there were no facts before the insurer which, if believed, would justify denial of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (internal citations omitted). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that reason is later found to be

---

[28] Pl.'s Resp. 10, ECF No. 25.
[29] Def.'s Reply 9, ECF No. 30.
[30] *Id.* at 8–9. Church Mutual also asks the Court to limit First Baptist's recovery for insulation and sheathing. *Id.* But First Baptist does not contest that insulation and sheathing costs are necessitated to meet code requirements. Pl.'s Resp. 10, ECF No. 25.

erroneous, the insurer is not liable for the tort of bad faith." *Id.* Whether the insurer had a "reasonable" basis for denying or delaying payment of a claim is a fact-specific inquiry that is "judged by the facts before the insurer at the time the claim was denied." *Viles v. Sec. Nat. Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).

Importantly, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015) (cleaned up). Moreover, "[b]ecause the statutory and common law standards are now the same, a finding that there is no common law violation as a matter of law also eliminates the statutory claims [under the Deceptive Trade Practices Act]." *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 579 (W.D. Tex. 1999).

Church Mutual seeks to avoid First Baptist's claims for breach of the common law duty of good faith and fair dealing, as well as its claims under the Texas Insurance Code § 541 and Deceptive Trade Practices Act ("DTPA") on grounds that the evidence shows nothing more than a bona fide coverage dispute.[31] As expected, the parties frame Church Mutual's conduct with respect to the underlying Claim and subsequent investigation in diametrically opposite terms. According to the insurance company, "the evidence reveals that Church Mutual completed a timely and thorough investigation of [First Baptist]'s claim, repeatedly re-inspecting the loss upon request and working directly with [the church] and its public adjuster in furtherance of its efforts to determine the extent of loss or damage."[32] By contrast, First Baptist alleges Church Mutual "performed an unreasonable and substandard investigation, one that was pre-textual and intended

---

[31] Def.'s Br. 15–17, ECF No. 24.
[32] Def.'s Reply 11, ECF No. 30.

to result in an unequitable settlement"[33] and, among other things, that it "refused to pay the [Claim] without conducting a reasonable investigation."[34]

Upon reviewing the facts and drawing all inferences in favor of the nonmovant, the Court finds that First Baptist has pointed to sufficient record evidence with which a jury could find that Church Mutual had no reasonable basis for denying or delaying payment of the Claim, at least during the first seven months of the underlying investigation. Of note, in its June 9 Denial Letter Church Mutual confirmed it would not be covering any more than its initial payment because the other damage to the Property was "the result of age, wear and tear and deferred maintenance and . . . not related to a covered cause of loss."[35] This despite the fact that Church Mutual did not send its September 13 Information Request for building maintenance and other records until four months *after* sending the denial letter. Without having such information, Church Mutual would have no reasonable basis for denying or delaying the Claim on those grounds. Moreover, Church Mutual's withholding of payment for code upgrades in August 2021 based on evidence "show[ing] that various code upgrades would not be necessary" is not justified given that Church Mutual did not learn of possible non-enforcement from the City or request information from First Baptist about code enforcement on the Property until *September* 2021—seven months after the Claim was first submitted.[36]

The Court finds that this evidence, in the inference required at this stage, is sufficient to overcome Church Mutual's defense that its repeated denials and delay of payment was merely the result of a bona fide coverage dispute. Because a jury could find that Church Mutual's had no

---

[33] Pl.'s Resp. 11, ECF No. 25.
[34] *Id.* at 15.
[35] Def.'s App'x, Ex. F, ECF No. 23-6; Pl.'s Br. 3–4, ECF No. 25.
[36] Def.'s Reply 11–12, ECF No. 30; Moncrief Email, Ex. T, ECF No. 31-4; *see also* Claim Adjustment Letter 2, Ex. J, ECF No. 23-10 (withholding more than $100,000 of the total RCV).

reasonable basis for its denials of or delayed payment of the Claim based on the facts before it at the time of those denials, there remains a genuine dispute as to Church Mutual's purported good faith. As such, Church Mutual's motion for summary judgment on the common law claim of bad faith and DTPA claim are **DENIED**.

## IV.    CONCLUSION

For the reasons discussed, Defendant Church Mutual Insurance Company, S.I.'s Motion for Partial Summary Judgment (ECF No. 21) is **DENIED**.

**SO ORDERED** this **12th day** of **March, 2023**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**